# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

|  |  |  |
|---|---|---|
| **BARRY STAUBUS, in his official capacity as** | ) | |
| **the District Attorney General for** | ) | |
| **the Second Judicial District,TN;** | ) | |
| **TONY CLARK, in his official capacity as** | ) | |
| **the District Attorney General for the** | ) | |
| **First Judicial District, TN;** | ) | |
| **DAN ARMSTRONG, in his official capacity as** | ) | |
| **the District Attorney General for the** | ) | |
| **Third Judicial District, TN; and BABY DOE,** | ) | |
| **by and through his Guardian Ad Litem,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 2:17-CV-00122** |
| | ) | |
| **v.** | ) | **Judge Thomas A. Varlan** |
| | ) | |
| **PURDUE PHARMA, L.P.:** | ) | |
| **PURDUE PHARMA, INC.:** | ) | |
| **THE PURDUE FREDERICK COMPANY:** | ) | |
| **MALLINCKRODT PLC;** | ) | |
| **ENDO HEALTH SOLUTIONS, INC;** | ) | |
| **ENDO PHARMACEUTICALS, INC;** | ) | |
| **CENTER POINTE MEDICAL CLINIC, LLC;** | ) | |
| **ELIZABETH ANN BOWERS CAMPBELL;** | ) | |
| **PAMELA MOORE; and** | ) | |
| **ABDELRAHMAN HASSABU MOHAMED,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

---

# TABLE OF CONTENTS

Page

I.    INTRODUCTION…..………………………………………………………..1

II.   RELEVANT FACTUAL BACKGROUND…..……………………………2

III.  ARGUMENT……………………………………………………………5

    A.    Legal Standard………………………………………………………...…5

    B.    Endo's Notice Of Removal Is Procedurally Defective.....................................6

    C.    Endo's Notice Fails To Establish Complete Diversity.....................................7

        1.    Endo Does Not Challenge The Validity Of Plaintiffs' Claims Against The Non-diverse Defendants, Effectively Conceding That This Case Must Be Remanded…………………….…...............7

        2.    Endo Does Not Point This Court To Any Reasoned Basis Upon Which It Could Sever The DDLA and Nuisance Claims Against The Non-Diverse Defendants from the DDLA and Nuisance  Claims Against Diverse Defendants.....................................9

            a.    Because the Non-Diverse Defendants are necessary parties, their claims cannot be severed.....................................9

            b.    Severance in this case would have no precedent and serve no legitimate purpose...........................................11

        3.    The "Fraudulent Misjoinder" Doctrine Is Not Recognized In This Circuit And  Can By Definition Have No Application To A Case Where The Same Causes Of Action Apply To The Diverse and Non-Diverse Defendants.....................................14

            a.    The *Asher* decision cited in Endo's Notice actually supports remand.......................................................15

            b.    *McDowell Cty.*, a West Virginia district court opinion, is entirely unpersuasive................................................16

    D.    The Proposed Claim-Splitting Between Federal And State Courts Is Not Practical.................................................................17

    E.    Plaintiffs Are Entitled To Attorney's Fees.........................................................19

IV.   CONCLUSION...................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asher v. Minn. Mining & Mfg. Co.*,
2005 WL 1593941 (E.D. Ky. June 30, 2005) ...................................................15, 16

*Brierly v. Alusuisse Flexible Packaging, Inc.*,
184 F.3d 527 (6th Cir. 1999) ................................................................................5

*Casias v. Wal-Mart Stores, Inc.*,
695 F.3d 428 (6th Cir. 2012) ...................................................................8, 14, 15

*Cent. Ohio Gaming Ventures, LLC v. Goodman*,
2011 WL 1981185 (S.D.Ohio May 20, 2011) ........................................................15

*Central Bank v. Jerrolds*,
2015 WL 1486368 (W.D. Tenn. Mar. 31, 2015) ..................................................14

*Columbus Equip. Co. v. RKJ Enterprises, LLC*,
2015 WL 5023059 (N.D. Ohio Aug. 24, 2015) ......................................................7

*Coyne v. Amer. Tobacco Co.*,
183 F.3d 488 (6th Cir. 1999) .......................................................................5, 8, 14

*Crockett v. Mutual of Omaha Bank*,
2013 WL 2384344 (M.D. Tenn. May 30, 2013) .....................................................7

*Cty. Comm'n of McDowell Cty. v. McKesson Corp.*,
2017 WL 2843614 (S.D. W. Va. July 3, 2017) .....................................................16

*Daniel v. Anderson County Emergency and Rescue Squad*,
469 F. Supp. 2d 494 (E.D. Tenn. 2007)...........................................................5, 6, 7

*Dubay v. Wells*,
437 F. Supp. 2d 656 (E.D. Mich. 2006)................................................................10

*Ellis v. Gallatin Steel Co.*,
390 F.3d 461 (6th Cir. 2004) ...............................................................................17

*Gaither v. Beam Partners*,
2017 WL 1217166 (E.D. Ky March 31, 2017) ...............................................11, 15

*Gaynor v. Miller*,
205 F. Supp. 3d 935, 941 (E.D. Tenn. 2016)......................................................6, 7

*Geffen v. Gen. Elec. Co.*,
    575 F. Supp. 2d 865 (N.D. Ohio 2008)...............................................................15

*Gooden v. National Union Fire Ins. Co.*,
    208 F. Supp. 2d 864 (N.D. Ohio 2002)..............................................................12

*Jamison v. Memphis Transit Management Co.*,
    381 F.2d 670 (6th Cir. 1967) ...............................................................................10

*Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*,
    176 F.3d 904 (6th Cir. 1999) .................................................................................8

*Johnson v. Bartley*,
    2015 WL 5612251 (E.D. Ky. 2015) ......................................................................9

*Joseph v. Baxter Int'l, Inc.*,
    614 F. Supp. 2d 868 (N.D. Ohio 2009).............................................................12, 13

*Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*,
    512 F. App'x 485 (6th Cir. 2013) .......................................................................14

*Keweenaw Bay Indian Community v. Michigan*,
    11 F.3d 1341 (6th Cir. 1993) ...............................................................................10

*Loftis v. United Parcel Serv., Inc.*,
    342 F.3d 509 (6th Cir. 2003) .............................................................................6, 7

*McElroy v. Hamilton Cty Bd. of Education*,
    2012 WL 12871469 (E.D. Tenn. Dec. 20, 2012).......................................11, 12, 13

*Molnar v. Shelby County Bd. of Educ.*,
    2014 WL 7335331 (W.D. Tenn. Dec. 19, 2014) ...................................................7

*Murriel–Don Coal Co. v. Aspen Ins. UK Ltd.*,
    790 F. Supp. 2d 590 (E.D. Ky. 2011) .................................................................15

*Newman-Green, Inc. Alfonso-Larain*,
    490 U.S. 826, 837 (1989)......................................................................................9

*Queen, ex rel., Province of Ont. v. City of Detroit*,
    874 F.2d 332 (6th Cir. 1989) .................................................................................5

*Schuckman v. Rubenstein*,
    164 F.2d 962 (6th Cir. 1947) ...............................................................................12

*Simeon v. Kentucky Dept. of Corrections*,
    2015 WL 9307328 (W.D. Ky. Dec. 21, 2015)......................................................7

iii

*Warthman v. Genoa Township Board of Trustees*,
 549 F.3d 1055 (6th Cir. 2008) ..............................................................19

**Statutes**

28 U.S.C. § 1446.......................................................................................6, 7

28 U.S.C. § 1447.....................................................................................19, 20

Tenn. Code. Ann. § 29-38-101, *et seq.* ........................................................4

Tenn. Code Ann. § 29-38-103 .............................................................5, 10, 16

Tenn. Code Ann. § 29-38-110 ...................................................................16

**Other Authorities**

Federal Rule of Civil Procedure 12 ..............................................................18

Federal Rule of Civil Procedure 19 ........................................................11, 12

Federal Rule of Civil Procedure 21 ...............................................................9

Federal Rule of Civil Procedure 56 ..............................................................18

Wright & Miller, *Federal Practice & Procedure*, §3606 ...........................12

# I.   INTRODUCTION

This Court has no subject matter jurisdiction to entertain this case. Plaintiffs District Attorney Barry Staubus, District Attorney Tony Clark, District Attorney Dan Armstrong, and Baby Doe's ("Plaintiffs") original and amended complaints allege claims only under state law against non-diverse parties, points wholly conceded in the Notice of Removal (Dkt. No. 1, "Notice"). Instead of defending this case in state court where it belongs, Defendants Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Purdue Pharma, L.P., Purdue Pharma, Inc., The Purdue Frederick Company, and Mallinckrodt PLC (collectively the "Diverse Defendants") have attempted to manufacture federal subject matter jurisdiction in a case where there is none. Exercising federal subject matter jurisdiction in this case would create a dark cloud hovering over every order, every piece of discovery, every action by this Court, because the Diverse Defendants have invited this Court to take hold of an action beyond the limits of federal power. Indeed, as Plaintiffs set forth below, there is simply no basis in law or fact to allow this Court to exercise subject matter jurisdiction of this case, and getting this question wrong would have dire consequences for the parties and the litigation. This case needs to be back in state court at once, where it belongs.

The Court must remand this case for two simple reasons. First, the Notice is procedurally defective in that all Defendants have not consented to removal.

Second, and most importantly, there is no diversity jurisdiction. Plaintiffs and four, properly joined Defendants – Center Pointe Medical Clinic, LLC ("Center Pointe"), Elizabeth Ann Bowers Campbell ("Campbell"), Pamela Moore ("Pamela Moore"), and Abdelrahman Hassabu Mohamed ("Mohamed") (collectively the "Non-Diverse Defendants") – are all citizens of Tennessee. Cognizant of this fact, the Diverse Defendants have asked this Court to undertake

the extraordinary and unprecedented step of severing the Non-Diverse Defendants and forcing Plaintiffs to proceed in two separate courts against two separate groups of defendants related to largely the same conduct involving the same set of state-law claims. Alternatively, the Non-Diverse Defendants invite this Court to invoke the "fraudulent misjoinder" doctrine and sever the Non-Diverse Defendants, but the Sixth Circuit has rejected this doctrine, and even if the Court wanted to consider ignoring the Sixth Circuit's rejection of the doctrine, it is clearly not applicable to the situation at bar. The simple truth is that there is no diversity jurisdiction in this case and the Court should resist the Diverse Defendants' attempts to manufacture it.

Finally, although the law does not support what the Diverse Defendants are seeking to do here, practicality also disfavors this course of action. According to the Diverse Defendants, Plaintiffs should be required to litigate their claims in two different forums in two different cases, directly contrary to how federal courts often require litigants to pursue claims. This would invite two different courts to handle discovery, dispositive motions, and trial, which will almost certainly result in conflicting rulings on a host of pre-trial topics, confusing obligations in discovery, and wasting of judicial resources as two different courts would have to devote resources to the exact same issues. It is hard to imagine a more difficult path for this case to follow to completion than the one invited by the Diverse Defendants with their unsupported attempts to remove this case to a federal forum.

Plaintiffs therefore request that this Court immediately remand this case to state court where it belongs and where it can be litigated in a court that clearly has subject matter jurisdiction to hear it.

## II.     RELEVANT FACTUAL BACKGROUND

Through this action, Plaintiffs seek to hold Defendants liable for the role that each played

in the prescription opioid and Neonatal Abstinence Syndrome epidemics ravaging the Opioid Epidemic Affected Counties.[1] Plaintiffs assert the same claims – violation of Tennessee's Drug Dealer Liability Act ("DDLA"), common law nuisance and statutory nuisance – against all Defendants.

As detailed in Plaintiffs' Amended Complaint, the Diverse Defendants developed and grew the prescription opioid market through a decades-long fraudulent scheme to mislead prescribing doctors and the public about the need for, and addictive nature of, opioids. (Plaintiffs' Amended Complaint ("Am. Compl.") ¶¶ 35, 70-120, 137-149, 157-159.[2]) With the dramatic increase in prescription opioid sales came a corresponding surge in abuse, addiction, improper prescribing of, and black market demand for opioids. The Diverse Defendants created the market for mis-prescribed and diverted opioids, were well aware of prescribing doctors' suspicious conduct and orders, and knew their products were being illegally diverted. (*Id.* ¶¶ 121-128, 150-152, 160-164.) However, rather than address these problems, the Diverse Defendants decided to profit from the mis-prescribing and diversion. Even when it became clear that the Opioid Epidemic Affected Counties were being devastated by the opioid epidemic, the Diverse Defendants continued to fraudulently promote their opioid products for long term chronic pain and other treatments unsupported by scientific evidence and to disseminate massive quantities of prescription opioids to the area, far in excess of any potential legitimate medical need, without taking any of the precautions necessary to minimize, much less prevent, illegal diversion. (*Id.* ¶¶ 130-132, 134-135, 152, 154-156, 165, 168.)

---

[1] As set forth Plaintiffs the Amended Complaint, the "Opioid Epidemic Affected Counties" include: the counties of Tennessee's First Judicial District (Carter County, Johnson County, Unicoi County, and Washington County), Second Judicial District (Sullivan County), and Third Judicial District (Greene County, Hamblen County, Hancock County, and Hawkins County).

[2] Plaintiffs' Amended Complaint is attached as Exhibit 2 to Endo's Notice.

For their part, the Non-Diverse Defendants were critical to the development of the black market for prescription opioids in the Opioid Epidemic Affected Counties. The reference in Endo's Notice to "Provider Defendants" and their so-called "patients" is misleading to the Court. (Dkt. 1, Notice of Removal ("Notice") at ¶¶ 1.b., 3.) In reality, Defendants Campbell and Moore are street-level drug dealers who have admitted to illegally distributing, or possessing with intent to distribute, significant quantities of opioids, and Defendants Center Pointe and Mohamed run "pill mills" that illegally distribute prescription opioids to their customers without any legitimate medical purpose. (Am. Compl. ¶¶ 231 – 264.) All of the Defendants played essential, mutually-supporting roles in developing the market for illegal diverted and mis-prescribed opioids in the Opioid Epidemic Effected Counties.

In particular, Defendant Mohamed, the former owner of a pain clinic in Morristown, Tennessee, admitted that he would have up to 60 "pain-management appointments" a day, at least 3 days a week, between January 3, 2012 and September 26, 2016. (*Id.* ¶ 259.) To handle the remarkably high volume of appointments, Defendant Mohamed implemented a "drive-through" scheme whereby customers would stand in a single-file line outside his office, and then he would meet with each customer for approximately 1 to 2 minutes, with the office door open, while the next customer waited in line just outside the door. (*Id.* ¶ 260.) Defendant Mohamed gave each "drive-through" customer a prescription for a controlled substance, including Hydrocodone, Oxycodone, Fentanyl, Morhpine, Opana, Oxycontin, or Oxymorphone. (*Id.*) The Diverse Defendants could have stopped, or at least not enabled, illegal diversion of prescription opioids through pill mills like the one run by Defendant Mohamed, but they chose otherwise.

Based on these well-plead allegations, Plaintiffs assert the same state-law claims against all of the Defendants, i.e. violation of the DDLA, Tenn. Code. Ann. § 29-38-101, *et seq.*,

common law nuisance, and statutory nuisance. (*Id.* ¶¶ 295-365.)  These claims are premised on a single, unifying legal theory: the Diverse Defendants and Non-Diverse Defendants all knowingly participated in the same illegal drug market and, in so doing, endangered the health and safety of the residents of the Opioid Epidemic Affected Counties.  As such, all Plaintiffs' state-law claims are properly joined in a single action.   Indeed, the DDLA specifically provides for joinder of multiple parties and was intended, as stated in the findings codified by the Tennessee General Assembly, to allow for aggregation of claims against multiple defendants involved in the illegal marketing and sale of drugs.  Tenn. Code Ann. § 29-38-103.

## III.    ARGUMENT

### A.    Legal Standard

"[T]he statutes conferring removal jurisdiction are to be strictly construed because removal jurisdiction encroaches on a state court's jurisdiction."  *Daniel v. Anderson County Emergency and Rescue Squad*, 469 F. Supp. 2d 494, 496 (E.D. Tenn. 2007) (citing *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999)).  "Because of this strict construction, all doubts regarding the removal petition must be resolved against removal."  *Id.* (citing *Queen, ex rel., Province of Ont. v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989)).

"Diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation."  *Coyne v. Amer. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999).  As the party seeking to bring this case into federal court, Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (collectively "Endo") "carr[y] the burden of establishing diversity jurisdiction."  *Id.* at 493.

Here, Endo fails to carry its substantial burden, because the procedurally defective Notice does not, nor could it, establish complete diversity among the parties.  As such, this Court should

grant Plaintiffs' Motion to Remand ("Motion").

**B.      Endo's Notice Of Removal Is Procedurally Defective**

The Sixth Circuit's "rule of unanimity" requires that "***all defendants in the action*** must join in the removal petition or file their consent to removal in writing within thirty days of receipt of (1) a summons when the initial pleading demonstrates that the case is one that may be removed, or (2) other paper in the case from which it can be ascertained a previously unremovable case has become removable." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003) (explicitly adopting the "rule of unanimity" for the first time, and explaining that the rule has been derived from 28 U.S.C. § 1446) (emphasis added); *Gaynor v. Miller*, 205 F. Supp. 3d 935, 941 (E.D. Tenn. 2016) (holding that the 2011 amendments to 28 U.S.C. § 1446 "codified the unanimity rule from *Loftis*").   "Failure to obtain unanimous consent forecloses opportunity for removal under Section 1446." *Id.*

As the removing party, it was Endo's burden to demonstrate that the rule of unanimity has been satisfied. *Daniel*, 469 F. Supp. 2d at 497 (granting motion to remand "because the defendants have not satisfied the rule of unanimity"). Endo failed to meet that burden. Endo's Notice stated only that "Defendants Purdue Pharma L.P., Purdue Pharma Inc., the Purdue Frederick Company, Inc., and Mallinckrodt PLC consent to this removal." (Dkt. 1, Notice of Removal ("Notice") at ¶ 33.) The Notice did not reference any of the Non-Diverse Defendants. (*See, e.g.*, *id.* at ¶¶ 32-34.)   Although Defendant Center Pointe has now filed a Consent to Removal,[3] (Dkt. 7), there is no indication that the remaining Non-Diverse Defendants similarly

---

[3] In addition to the Consent to Removal, Defendant Center Pointe has also filed an Answer to Plaintiffs' Amended Complaint.  (Dkt. 8.)  These filings undercut Endo's argument that the Non-Diverse Defendants are dispensable parties and that they are "fraudulently misjoined."  Indeed, Defendant Center Pointe clearly believes the claims against it should be adjudicated in the same forum as the claims against the Diverse Defendants.

consent.[4]

Because Endo has not demonstrated that all Defendants consent in the removal, its Notice is "procedurally defective" and removal under Section 1446 is foreclosed.  *Loftis*, 342 F.3d at 516; *Daniel*, 469 F. Supp. 2d at 497.  On that basis alone, this Court should grant Plaintiffs' Motion.  *Loftis*, 342 F.3d at 516.

Additionally, because the opioid and Neonatal Abstinence Syndrome epidemics threaten the lives of innocent East Tennessee residents each and every day, and will continue to do so if left unabated, Plaintiffs are severely prejudiced by any further delay in remand.  Already, removal has served to delay responses to Plaintiffs' written discovery requests.  This prejudice weighs strongly in favor of remanding this matter immediately.

## C.    Endo's Notice Fails To Establish Complete Diversity

### 1.    Endo Does Not Challenge The Validity Of Plaintiffs' Claims Against The Non-Diverse Defendants, Effectively Conceding That This Case Must Be Remanded.

The rule for remand in the Sixth Circuit is explicit: "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question **the removing**

---

[4] Plaintiffs served Defendant Moore with the original complaint via certified mail more than 30 days ago, on June 27, 2017, which is the same day Defendant Endo was served.  Defendant Moore has not consented to removal.  (*See, e.g.*, Notice at ¶¶ 32-34.)  Plaintiffs also served Defendant Center Pointe with the original complaint on June 27, 2017.  Defendant Center Pointe's Consent to Removal was not filed until July 31, 2017, which is more than 30 days after service.  (Dkt. 7.)  Defendant Center Pointe offered no justification for filing the Consent to Removal outside the 30-day timeframe.  (*See, e.g., Id.*) Although there is a split of authority in the Sixth Circuit, a majority of district courts have held that, when a defendant fails to remove or consent to removal within 30 days from service, it is a threshold jurisdictional issue and removal is foreclosed by § 1446.  *See Columbus Equip. Co. v. RKJ Enterprises, LLC*, 2015 WL 5023059, at *6 (N.D. Ohio Aug. 24, 2015) ("Because [defendants] RKJ and Jones did not consent to removal of this action within 30 days of service as required by § 1446 and the Sixth Circuit's rule of unanimity, [defendant] Access Midstream's removal is defective and the case must be remanded."); *Simeon v. Kentucky Dept. of Corrections*, 2015 WL 9307328, at *3 (W.D. Ky. Dec. 21, 2015) (removing defendants failed to comply with § 1446 and the procedural "rule of unanimity" when they unilaterally removed the case from state courts without obtaining consent of 3 defendants within 30 day statutory period); *Molnar v. Shelby County Bd. of Educ.*, 2014 WL 7335331, at *2 (W.D. Tenn. Dec. 19, 2014) (granting motion to remand and denying motion to amend notice of removal when notice of removal did not contain any statement representing consent of co-defendants and written consent was not obtained within 30 days of service); *Crockett v. Mutual of Omaha Bank*, 2013 WL 2384344, at *2 (M.D. Tenn. May 30, 2013) ("Subsequent consent to removal after the thirty day period has passed is insufficient to satisfy the rule of unanimity.").  *But see Gaynor v. Miller*, 205 F. Supp. 3d 935, 940 (E.D. Tenn. 2016) (holding that "§ 1446(b)(2)(C) does not require such consent to be filed within thirty days").

**defendant may avoid remand only by demonstrating that the non-diverse party has been fraudulently joined**." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)) (emphasis added). Fraudulent joinder is different from the novel "fraudulent misjoinder" doctrine asserted by Endo and addressed in Section III.C.3 of this Motion. "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 492-93. *Coyne* provides the relevant standard:

> [I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

*Id.* at 493.

In this case, Endo has tellingly not even attempted to make that showing and could not do so; Plaintiffs have asserted colorable DDLA and nuisance claims against all of the Diverse Defendants and Non-Diverse Defendants. Having not attempted to make the required showing "that the non-diverse party has been fraudulently joined" – that is, joined based on the assertion of facially invalid claims – Endo has simply not met the Sixth Circuit's requirement for removal. *Casias*, 695 F.3d at 432. Notwithstanding the handful of inapposite, exceptional district court decisions cited in Endo's Notice, the law of this Circuit requires that this case, raising no federal question and stating colorable claims against the Non-Diverse Defendants, be remanded.

2. **Endo Does Not Point This Court To Any Reasoned Basis Upon Which It Could Sever The DDLA and Nuisance Claims Against The Non-Diverse Defendants from the DDLA and Nuisance Claims Against Diverse Defendants.**

Seeking an end run around the rule that claims against non-diverse parties defeat diversity, Endo urges this Court to exercise its discretion to sever all of the Non-Diverse Defendants. This is an exceptional request; "[e]ven when a party could be severed under Rule 21 … the 'authority to dismiss a dispensable non-diverse party … should be exercised sparingly.'" *Johnson v. Bartley*, 2015 WL 5612251, at *2 (E.D. Ky. 2015) (quoting *Newman-Green, Inc. Alfonso-Larain*, 490 U.S. 826, 837 (1989)).[5] Certainly, there is no Sixth Circuit appellate decision or Tennessee District Court decision providing any support for Endo's position. Endo relies on two exceptional cases in which the claims against in-state and out-of-state defendants were grounded in different legal theories and bore little or no relationship to each other. These authorities simply have no application to this case; discretionary severance has never been used in this Circuit to sever in-state and out-of-state defendants all facing the same state law causes of action, as here.

This Court should properly decline to sever claims against the Non-Diverse Defendants for at least two reasons. First, the Non-Diverse Defendants are necessary parties to this action, and, therefore, severance is impermissible. Second, use of the Court's exceptional severance power in this case will serve no legitimate purpose, undermining applicable state law while making this litigation needlessly complex and expensive.

a. Because the Non-Diverse Defendants are necessary parties, their claims cannot be severed.

Endo appears to concede that this Court's power to sever claims of non-diverse parties in

---

[5] In this Circuit, courts have typically exercised such discretion where there has been a showing of fraudulent joinder, where necessary to consolidate cases into an MDL. *See Johnson*, 2015 WL 5612251, at *3 (collecting cases).

the exceptional case has no application to necessary parties. (Notice at ¶¶ 20-23 (limiting severance to "dispensible" parties).) Here, the Non-Diverse Defendants are plainly necessary parties under the applicable standard. The Sixth Circuit has cautioned that the phrase "necessary party" "is a misnomer. It does not mean 'essential parties' rather, it means 'desirable parties' as distinguished from indispensable parties on the one hand, and from proper parties, on the other. It means, parties that should be joined, if feasible." *Dubay v. Wells*, 437 F. Supp. 2d 656, 659 (E.D. Mich. 2006) (quoting *Jamison v. Memphis Transit Management Co.*, 381 F.2d 670, 674 (6th Cir. 1967)); *see also Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1346 (6th Cir. 1993) (emphasizing that the necessary party analysis "is not be applied in a rigid manner but should instead by governed by the practicalities of the case").

Here, Tennessee law makes it clear that the Non-Diverse Defendants "should be joined, if possible." The Tennessee General Assembly, in making Tennessee one of eighteen states to adopt the Model Drug Dealer Liability Act, specifically adopted that law to create a vehicle for aggregating in a single suit claims against multiple participants in the unlawful distribution of drugs. In adopting the DDLA, the General Assembly explicitly codified its "legislative finding" that "[t]hose involved in the illegal drug market in a community are necessarily interrelated and independent," its concern that existing tort law erected "barriers" to suit against certain illegal market participants, and its intent with adoption of the DDLA to "impose[] liability against all participants in the illegal drug market, including small dealers." Tenn. Code Ann. § 29-38-103. Endo cites no reported or unreported decision in any jurisdiction severing DDLA claims to establish diversity; to do so would entirely upend the stated purpose of the statute, which is precisely to place multiple participants in the illegal drug market in a single court where they can be held collectively accountable for the damage they have done to their fellow citizens.

In this case, moreover, both the Diverse Defendants and Non-Diverse Defendants are "necessary" in that they are "'needed for just adjudication' under Rule 19," *McElroy v. Hamilton Cty. Bd. of Education*, 2012 WL 12871469, at \*2 (E.D. Tenn. Dec. 20, 2012), because it is the misconduct of all the Defendants, when taken in combination, which caused the crippling opioid epidemic in the Opioid Epidemic Affected Counties. Indeed, without the constant flood of prescription opioids coming from Endo and other Diverse Defendants, the Non-Diverse Defendants would not have the supply needed to meet the ever-increasing black market demand of drug-addicted East Tennessee residents. And, without street-level drug dealers and "pill mills" like Non-Diverse Defendants Campbell, Moore, Center Pointe, and Mohamed relentlessly pushing opioids and helping to sustain the illegal drug market, the Diverse Defendants would not have been able to continue their remarkable commercial success which depended, in large part, on rising rates of abuse, addiction, and diversion of prescription opioids. Were the claims against the various Defendants in this action severed, the Diverse Defendants would be in a position to "push off liability" on the Non-Diverse Defendants (and vice-versa) and thereby make it likely that "different juries in State and Federal court will find multiple defendants responsible for 'more or less liability than they deserve.'" *Gaither v. Beam Partners*, 2017 WL 1217166, at \*13 (E.D. Ky March 31, 2017) (rejecting severance of necessary parties). Compounding those problems is the potential for competing injunctions addressing the opioid crisis. The likelihood of inconsistent verdicts, injunctive relief and the like further confirms that all of the named Defendants in the present action are "necessary parties" that should defend their claims together in a single court.

        b.    <u>Severance in this case would have no precedent and serve no legitimate purpose.</u>

The necessary party analysis is not dispositive of the severance issue. The general rule,

applicable in this case, is that all Defendants named in a lawsuit, whether or not necessary, must be considered when determining diversity. As stated in the leading treatise:

> It occasionally was said too loosely in some older cases that only the citizenship of 'indispensable' – Rule 19(b) – parties will be considered in determining whether diversity jurisdiction exists. This simply is not the rule. Even though a party is merely proper, as, for example, a joint tortfeasor, if in fact he or she has been joined in the action, that party's citizenship must be considered for purposes of determining whether subject matter jurisdiction exists.

Wright & Miller, *Federal Practice & Procedure*, §3606 Parties Considered in Determining Diversity (April 2017 update). This is the rule in the Sixth Circuit. *Gooden v. National Union Fire Ins. Co.*, 208 F. Supp. 2d 864, 865 (N.D. Ohio 2002) (quoting *Schuckman v. Rubenstein*, 164 F.2d 962, 956 (6th Cir. 1947)) ("Even where a defendant, being a citizen of the same state of which one of the plaintiffs is also a citizen, is not an indispensable party, but nevertheless a proper party, his joinder as a defendant by the plaintiff destroys the necessary diversity of citizenship.").

Endo cites two very exceptional cases to justify discretionary severance, but they bear no relationship to the present action and certainly do not justify this Court's departure from the general rule that the citizenship of non-diverse parties must be considered. The cases cited by Endo both present the exceptional situation in which two groups of defendants facing different claims based on different theories are lumped together in a single action. (*See* Notice at ¶¶ 20-22 (citing *McElroy v. Hamilton Cty Bd. of Education*, 2012 WL 12871469 (E.D. Tenn. Dec. 20, 2012), *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868, 870-71 (N.D. Ohio 2009)).) In each of those cases, the plaintiffs brought products liability claims against out-of-state defendants, and then also asserted claims against various in-state defendants based on entirely different legal theories. In *McElroy*, in which plaintiffs and defendants **agreed** to sever the non-diverse parties,

the Court was presented with product liability claims against out of state manufacturers and claims against a local Board of Education "which largely sound[ed] in contract or unrelated tort law." *McElroy*, 2012 WL 12871469, at *3. In severing the Board with the *parties' agreement*, the Court recognized that the claims against that entity "b[ore] little resemblance" to the claims against the manufacturers. *Id.* The Court further recognized that because the claims against the severed defendants were unrelated, there was little danger that "Plaintiffs' ability to protect their interests in this controversy would be impaired or that Defendants would somehow be exposed to multiple or inconsistent liabilities." *Id.* Similarly, in *Joseph*, the Court found that plaintiffs' negligence claims against certain medical providers "differ[ed] from the Josephs' product liability claim" against an out-of-state manufacturer." *Joseph*, 614 F. Supp. 2d at 872.

These cases represent the rare exception to the general rule that legitimate claims against non-diverse parties defeat diversity. They plainly bear no relationship to this case. Here, the Diverse Defendants and Non-Diverse Defendants face the same DDLA and nuisance claims. (Am. Compl. ¶¶ 295-365.) As such, the claims against Endo and the other Diverse Defendants implicate the exact same tort law principles as the claims levied against the Non-Diverse Defendants. (*Id.*) Forcing the Non-Diverse Defendants to defend DDLA and nuisance claims in state court while permitting the Diverse Defendants to litigate the same claims in federal court would, even if permissible, be needlessly complicated and expensive. Such basic common questions as the scope and operation of the market for mis-prescribed and diverted drugs, the damage caused by those drugs, the role of those drugs in the creation of the epidemic of infants suffering Neonatal Abstinence Syndrome and many other issues would demand duplicative discovery, duplicative expert testimony, and burdensome, duplicative participation by the already overburdened public officials who are proceeding as plaintiffs while at the same time

contending with the daily burdens imposed by the opioid crisis in their jurisdictions. There is no authority supportive of severance under such circumstances.

### 3. The "Fraudulent Misjoinder" Doctrine Is Not Recognized In This Circuit And Can By Definition Have No Application To A Case Where The Same Causes Of Action Apply To The Diverse and Non-Diverse Defendants.

Endo also argues that the Non-Diverse Defendants are fraudulently mis-joined, and therefore, can simply be "ignored" in determining diversity jurisdiction. (Notice at ¶¶ 24-27.) Endo's argument fails.

As Endo concedes in the Notice, the Sixth Circuit does not recognize the doctrine of fraudulent misjoinder. (Notice at ¶ 26.) *See also Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 491 n.1 (6th Cir. 2013) (stating that the Sixth Circuit "ha[s] not adopted the fraudulent misjoinder doctrine"). To the contrary, the rule in the Sixth Circuit is that **"only"** a showing of fraudulent joinder – i.e. that "plaintiff could not have established a cause of action against non-diverse defendants under state law" – justifies removal. *Casias*, 695 F.3d at 432; *Coyne*, 183 F.3d at 492-493. Here, Endo has not even attempted to carry that burden. Plaintiffs' claims against the Non-Diverse Defendants are proper and supported by clear state law; that should end the inquiry in the Sixth Circuit.

The only United States District Court in Tennessee to consider the issue has rejected the existence of the "fraudulent misjoinder" doctrine. *Central Bank v. Jerrolds*, 2015 WL 1486368, at *4 (W.D. Tenn. Mar. 31, 2015) ("[T]he Court is persuaded by many of the same considerations as other courts that have declined to recognize fraudulent misjoinder. . . . [T]he fact that the removal statutes do not mention fraudulent misjoinder – and the fact that their structure neither anticipates nor necessitates the doctrine – provides sufficient reason to reject the doctrine."). The result in *Jerrod* properly carries out the Sixth Circuit's command that non-

diverse parties can be eliminated "only" by a showing that their claims are meritless.  *Casias*, 695 F.3d at 432.

District court decisions in this Circuit from outside Tennessee also weigh heavily against adopting fraudulent misjoinder. Endo's Notice cites a single decision from the Eastern District of Kentucky recognizing the doctrine.  (Notice at ¶ 27 (citing *Asher v. Minn. Mining & Mfg. Co.*, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 2005)).)  However, more recent opinions from that very district refuse to adopt the doctrine of fraudulent misjoinder and strongly suggest that *Asher* was wrongly decided. *See Gaither*, 2017 WL 1217166, at *11 (refusing to apply fraudulent misjoinder doctrine, and noting: "This court reaches the same conclusion as the majority of courts in the Eastern District of Kentucky by deciding that application of fraudulent misjoinder should be left to the state courts."); *Murriel–Don Coal Co. v. Aspen Ins. UK Ltd.,* 790 F. Supp. 2d 590, 600 (E.D. Ky. 2011) ("[I]n light of the questionable basis of the Court's authority to conduct fraudulent-misjoinder analysis and the numerous unsettled doctrinal questions, the Court agrees with the other district courts that have left the whole enterprise to the state courts.").

Consistent with *Gaither* and *Murriel-Don Coal Co.*, numerous other district courts in the Sixth Circuit have squarely rejected the doctrine.  *See  Geffen v. Gen. Elec. Co.,* 575 F. Supp. 2d 865, 872 (N.D. Ohio 2008) ("[T]he Court declines to follow the *Tapscott* holding and apply the doctrine of fraudulent misjoinder."); *Cent. Ohio Gaming Ventures, LLC v. Goodman,* 2011 WL 1981185, at *9 (S.D. Ohio May 20, 2011) (finding that "there is no real need" for fraudulent misjoinder).

a.  The *Asher* decision cited in Endo's Notice actually supports remand.

The *Asher* decision, the only case from within the Sixth Circuit or its district courts relied on by Endo, confirms that Endo's misjoinder argument, even if recognized in this Circuit, would

have no application here. In *Asher*, a district court opinion from the Eastern District of Kentucky, the Court recognized that "the issue of whether claims have been mis-joined should be evaluated under state procedural law rather than federal law." *Asher*, 2005 WL 1593941, at *6. Tennessee's DDLA specifically permits joinder of multiple defendants and is designed to permit suits against all participants in the marketing and distribution of illegal drugs, such as the diverted and unlawfully prescribed opioids at issue in this suit. Tenn. Code Ann. § 29-38-110 (providing for joinder of "two or more persons" liable under the DDLA). Given that Endo concedes that claims must be "unrelated" to be fraudulently misjoined, it is hard to see how it can seriously suggest that that doctrine should be extended to this case, in which Plaintiffs have pled a cause of action that specifically imposes liability on all Defendants as participants in the illegal drug market in the Opioid Epidemic Affected Counties. (Notice at ¶¶ 20-23.)

> b. *McDowell Cty.*, a West Virginia district court opinion, is entirely unpersuasive.

Finding no meaningful support for its "fraudulent misjoinder" argument in the Sixth Circuit, Endo urges this Court to rely instead on non-binding precedent from a district court in the Fourth Circuit. (Notice at ¶ 25 (citing *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 2017 WL 2843614, at *5 (S.D. W. Va. July 3, 2017)).) For purposes of determining diversity jurisdiction here, *McDowell Cty.* is unpersuasive for two reasons. First, West Virginia has not adopted the Model Drug Dealer Liability Act. Tennessee has done so – specifically, in the words of the Tennessee General Assembly, to "impose[] liability against all participants in the illegal drug market." Tenn. Code Ann. § 29-38-103. Thus, the *McDowell Cty.* court was not presented with a cause of action specifically designed to capture all actors in the chain of distribution of illegal drugs, rendering any question about the propriety of joinder a non-starter.

Second, as Endo concedes in its Notice, the *McDowell Cty.* court based its holding on the fact that the claims against the non-diverse defendant "rest[ed] on different legal theories than the claims against the [diverse defendants]." (Notice at ¶ 25.) Here, in contrast, Plaintiffs' claims against the Diverse Defendants and those against the Non-Diverse Defendants all necessarily rest on the same legal theory, i.e. knowing participation in the illegal drug market for prescription opioids. Accordingly, even if the "fraudulent misjoinder" doctrine were viable in the Sixth Circuit, which it is not, *McDowell Cty.* would not provide even persuasive authority with respect to the application of that novel doctrine in this case.

Endo's "misjoinder" arguments are meritless and should be discarded. The Sixth Circuit rule remains that a non-diverse party must be considered for diversity purposes unless fraudulently joined – that is, unless there is no colorable claim against the non-diverse party. That showing has not even been attempted by Endo here. The Sixth Circuit has never adopted the notion that "fraudulent misjoinder" – adding parties with unrelated claims – can also justify eliminating non-diverse parties, and the district courts within the Circuit have overwhelmingly rejected that doctrine. Even if recognized, the "fraudulent misjoinder" doctrine would in any event have no application in this case, where Plaintiffs assert claims against all Defendants based on a statute that specifically authorizes joinder. Endo has tellingly not even attempted to address the actual requirements of the specific state law claims at issue.

**D.**    **The Proposed Claim-Splitting Between Federal And State Courts Is Not Practical**

Given the practical considerations at play, it is not surprising that the default federal rule is that "a plaintiff must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004). Endo's suggestion that Plaintiffs' claims should be split between litigating against

the Non-Diverse Defendants in state court and the Diverse Defendants in federal court turns this prohibition against claim-splitting on its head and begs the question: if Plaintiffs are prohibited from splitting their claims between federal and state court, why should the Diverse Defendants be able to force them to do so?

Allowing this claims-splitting would create havoc throughout this litigation. Two courts would have to rule on substantially the same dispositive motions at both the Rule 12 and Rule 56 phases, and if these rulings resulted in conflicting determinations, both courts would face a motion to reconsider based on the other court's ruling.

Discovery would also be a mess. There is little doubt that both the Non-Diverse Defendants and the Diverse Defendants would be subject to discovery in both lawsuits. Would these defendants agree to sit for additional depositions? If a court ruled that some information was not discoverable in one case, would a party then try to obtain it in the other case?

Moreover, even if this Court agreed to sever the Non-Diverse Defendants to manufacture subject matter jurisdiction, that would not end the inquiry for the state court proceeding. After all, if the Non-Diverse Defendants assert comparative fault or other defenses against the Diverse Defendants, the Plaintiffs then have the right to rename them in the state court proceeding. Would this Court's ruling on this issue at this time somehow defeat this right of the Plaintiffs to proceed in a single suit against all potentially liable parties?

In short, proceeding on the path set out in Endo's Notice is ripe with procedural and practical problems that can and should be avoided simply by doing what the law compels this Court to do: send this case back to state court where it can be litigated in one forum with all parties who have an interest are present and subject to the ruling court's jurisdiction.

### E.  Plaintiffs Are Entitled To Attorney's Fees

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." Here, an award of fees is plainly appropriate.  Endo's Notice has no "objectively reasonable basis" and serves as little more than a delay tactic in critical litigation addressing an issue of great immediacy.  *Warthman v. Genoa Township Board of Trustees*, 549 F.3d 1055, 1064 (6th Cir. 2008).  As a threshold matter, Endo's Notice is procedurally defective – Endo chose to proceed without obtaining proper consent from all parties, and has not satisfied the requirements of the removal statute.  For that reason alone, Endo should be liable for Plaintiffs' costs and fees. Endo's arguments for removal are, moreover, substantively without basis.  Plaintiffs have pled valid claims against all the Non-Diverse Defendants, and Endo has not challenged the validity of those claims.  In the Sixth Circuit, those claims defeat diversity and preclude removal.  Endo's suggestion that this Court could appropriately employ the "sparingly" used power to sever claims in this case is not objectively reasonable.  Here, this Court is not presented, as in the severance cases cited by Endo, with entirely different claims against unnecessary parties lumped together; Plaintiffs assert the **same claims** under the **same theories** against all Defendants, and for their DDLA claim rely on a statute designed to allow such claims to be aggregated in one action.  If there is precedent for Endo's severance argument, it has not been cited.  Endo's reliance on the novel doctrine of "fraudulent misjoinder" is similarly unreasonable.  That doctrine is not the law in this Circuit, and by definition could never be applied in a case involving the DDLA, which specifically provides for the joining of claims against various actors in the illegal drug market.

Endo's Notice is procedurally inadequate and substantively meritless. It has needlessly delayed this important litigation and prejudiced Plaintiffs. This is thus an appropriate case for an award of fees and costs under 28 U.S.C. § 1447(c).

## IV.    CONCLUSION

As demonstrated herein, this Court lacks subject matter jurisdiction over this case. Accordingly, Plaintiffs respectfully request that the Court remand the case to the Circuit Court for Sullivan County. Pursuant to 28 U.S.C. § 1447(c), Plaintiffs further request an award of their costs and attorneys' fees incurred as a result of the improper removal.

Respectfully submitted,

 s/ James G. Stranch, III
BRANSTETTER, STRANCH &
JENNINGS, PLLC
James G. Stranch, III (BPR #2542)
J. Gerard Stranch, IV (BPR #023045)
Tricia A. Herzfeld (BPR#26014)
Benjamin A. Gastel (BPR#28699)
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN  37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
jims@bsjfirm.com
gerards@bsjfirm.com
triciah@bsjfirm.com
beng@bsjfirm.com

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 4, 2017, a copy of this pleading was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.  Parties may access this filing through the Court's

electronic filing system.  All other parties will be served by regular U.S. mail as follows:

Ronald S. Range, Jr.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
P.O.  Box 3038
100 Med Tech. Parkway, Suite 200
Johnson City, TN 37602
*Attorney for Endo Health Solutions, Inc.*
*and Endo Pharmaceuticals, Inc.*

Sean Morris
ARNOLD & PORTER KAYE
SCHOLER LLP
777 S. Figueroa St., 44th Floor
Los Angeles, CA 90017
*Attorney for Endo Health Solutions, Inc.*
*and Endo Pharmaceuticals, Inc.*

Patrick J. Fitzgerald
R. Ryan Stoll
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
155 North Wacker Drive
Chicago, IL 60606
*Attorneys for Purdue Pharma L.P.,*
*Purdue Pharma Inc., and The Purdue*
*Frederick Company, Inc.*

Ingo W. Sprie, Jr.
ARNOLD & PORTER KAYE
SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
*Attorney for Endo Health Solutions, Inc.*
*and Endo Pharmaceuticals, Inc.*

Aubrey B. Harwell, Jr.
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
*Attorney for Purdue Pharma L.P.,*
*Purdue Pharma Inc., and The Purdue*
*Frederick Company, Inc.*

Sheila L. Birnbaum
Mark S. Cheffo
Hayden A. Coleman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
*Attorneys for Purdue Pharma L.P.,*
*Purdue Pharma Inc., and The Purdue*
*Frederick Company, Inc.*

Jessalyn H. Zeigler
BASS, BERRY, & SIMS PLC
150 Third Avenue South Suite 2800
Nashville, TN 37201
*Attorney for Mallinckrodt PLC*

Brien O'Connor
Andrew J. O'Connor
Kia Grant
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
*Attorneys for Mallinckrodt PLC*

Leslie T. Ridings
William C. Bovender
HUNTER SMITH & DAVIS, LLP
1212 North Eastman Road
Kingsport, TN 37644
*Attorneys for Center Pointe Medical
Clinic, LLC*

Elizabeth Ann Bowers Campbell
1390 Milligan Highway
Johnson City, TN 37601
**(Via U.S. Mail)**

Abdelrahman Hassabu Mohamed
522 Liddington Lane
Morristown, TN 37814
**(Via U.S. Mail)**

Pamela Moore
230 Union Hollow Rd.
Churchill, TN 37642
**(Via U.S. Mail)**

BRANSTETTER, STRANCH &
JENNINGS, PLLC

By:    s/ Benjamin A. Gastel              
       Benjamin A. Gastel