UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BARRY STAUBUS, in his official capacity as the District Attorney General for the Second Judicial District, Tennessee; TONY CLARK, in his official capacity as the District Attorney General for the First Judicial District, Tennessee; DAN ARMSTRONG, in his official capacity as the District Attorney General for the Third Judicial District, Tennessee; and BABY DOE, by and through his Guardian Ad Litem,<br><br>    Plaintiffs,<br><br>v.<br><br>PURDUE PHARMA, L.P.;<br>PURDUE PHARMA, INC.;<br>THE PURDUE FREDERICK COMPANY;<br>MALLINCKRODT LLC;<br>ENDO HEALTH SOLUTIONS, INC;<br>ENDO PHARMACEUTICALS, INC;<br>CENTER POINTE MEDICAL CLINIC, LLC;<br>ELIZABETH ANN BOWERS CAMPBELL;<br>PAMELA MOORE; and<br>ABDELRAHMAN HASSABU MOHAMED,<br><br>    Defendants. | No.: 2:17-CV-122-TAV-CLC |

## **MEMORANDUM OPINION**

This civil matter is before the Court on plaintiffs' Motion to Remand [Doc. 11]. Defendants Endo Health Solutions, Inc. and Endo Pharmaceuticals, Inc. (collectively, "Endo") responded in opposition to the motion as it applied to the Manufacturer

Defendants[1] [Doc. 21], and plaintiffs' reply was directed to both the Manufacturer Defendants and the Provider Defendants[2] (collectively, "defendants") [Doc. 24]. No other Manufacturer Defendants or Provider Defendants have filed responses in opposition to plaintiffs' motion to remand. For the reasons that follow, the Court will grant the plaintiffs' motion.

I. **Background**

Plaintiffs commenced this action in the Circuit Court for Sullivan County, Tennessee, on June 13, 2017 [Doc. 1-1]. Plaintiffs are three district attorneys acting on behalf of opioid-affected counties in Tennessee and a minor Tennessee citizen acting through his Guardian Ad Litem. They asserted claims of common law nuisance, statutory nuisance, and a violation of Tennessee's Drug Dealer Liability Act ("DDLA"), Tenn. Code Ann. § 29-38-103, against defendants. Plaintiffs allege defendants, together, created a fraudulent scheme to grow the prescription opioid market by misleading doctors and the public about the addictive nature of opioids. Plaintiffs are all citizens of Tennessee [Doc. 1-2 pp. 4–5]. Manufacturer Defendants are citizens of states or a foreign state other than Tennessee [Doc. 1-2 pp. 5–8]. Provider Defendants are citizens of Tennessee [Doc. 1-2 pp. 8–9].

---

[1] The Manufacturer Defendants are Purdue Pharma, L.P., Purdue Pharma, Inc., and the Purdue Frederick Company (together, "Purdue"), Mallinckrodt LLC ("Mallinckrodt"), and Endo Health Solutions Inc. and Endo Pharmaceuticals, Inc. (together, "Endo").

[2] The Provider Defendants are Center Pointe Medical Clinic, LLC, Elizabeth Ann Bowers Campbell, Pamela Moore, and Abdelrahman Hassabu Mohamed.

On July 27, 2017, defendants filed a Notice of Removal, claiming diversity jurisdiction as the basis of removal [Doc. 1]. Plaintiff filed the instant motion to remand to state court, arguing that defendants did not obtain consent from all defendants and that the presence of Provider Defendants defeats the diversity of citizenship requirement.

**II.     Standard of Review**

After a plaintiff files a case in state court, a defendant may remove it to federal court when certain conditions are met. Pursuant to 28 U.S.C. § 1441(a), defendants may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." However, federal courts have limited original jurisdiction and may only exercise "power authorized by Constitution and statute." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A presumption against federal jurisdiction exists, and federal courts must carefully guard against the temptation to expand beyond the jurisdictional bounds established by Congress. *See Kokkonen*, 511 U.S. at 377 ("Federal jurisdiction may not be 'maintained by mere averment,' 'inferred argumentatively,' or 'supplied by inference[.]'" (internal citations omitted)); *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951) ("To permit a federal trial court to enter a judgment . . . where the federal court could not have original jurisdiction . . . [would] give district courts power the Congress has denied them."); *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 391–92 (6th Cir. 2016). Under this presumption, "the general rule [is] that an action may be removed from state court to federal court only

if a federal district court would have original jurisdiction over the claim in suit." *Jefferson Cty. v Acker*, 527 U.S. 423, 430 (1999) (citing § 1441(a)).

A federal district court has original subject matter jurisdiction over two types of actions. First, the district court has original subject matter jurisdiction over actions that arise under the federal Constitution, federal law, or treaties of the United States. 28 U.S.C. § 1331. Second, the district court has original subject matter jurisdiction over actions based on diversity of citizenship, which are disputes between citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332.

In order to remove an action based solely on diversity jurisdiction, all properly joined defendants must consent to removal, and no properly joined defendant may be a citizen of the state in which the action is brought. *See* 28 U.S.C. §§ 1441(b)(2), 1446(b)(2)(A). This is sometimes referred to as the rule of unanimity, which the Sixth Circuit has adopted. *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). The party removing an action to federal court has the burden of showing that the federal jurisdictional requirements are satisfied. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993). When ambiguities arise in determining whether federal jurisdiction requirements are satisfied, courts must strictly construe the statutes and resolve ambiguities "in favor of remand to the state courts." *Brierly v. Alusuisse Flexible Packaging, Inc.,* 184 F.3d 527, 534 (6th Cir. 1999). If the court determines that the removing party has failed to meet this burden, then the court should remand the case back to state court.

### III. Analysis

In their Notice of Removal, Endo distinguishes the "Manufacturer Defendants" from the "Provider Defendants" [Doc. 1]. Endo states that the Manufacturer Defendants all consented to removal [Doc. 1 p. 11]. One Provider Defendant, Center Pointe Medical Clinic, LLC, has since consented to removal [Doc. 7]. The remaining Provider Defendants have not consented to removal. In fact, one Provider Defendant filed a Motion to Remand the action, clearly opposing removal [Doc. 37].[3] Endo submits that the Provider Defendants were not properly joined, so their consent was not necessary for removal, and the Court can ignore their citizenship for purposes of diversity jurisdiction. This theory rests on the Court adopting the fraudulent misjoinder doctrine, which prevents plaintiffs from defeating diversity jurisdiction by including claims against parties that are not related. Endo asserts that plaintiffs' claims against the Provider Defendants have a different legal and factual basis than plaintiffs' claims against the Manufacturer Defendants. Because plaintiffs fraudulently misjoined the defendants in an attempt to defeat diversity jurisdiction, Endo asserts, the fraudulent misjoinder doctrine allows the Court to ignore the citizenship of the Provider Defendants for purposes of diversity jurisdiction. Endo also

---

[3] On October 12, 2017, Defendant Abelrahman Hassabu Mohamed filed a Motion to Remand [Doc. 37]. In his Memorandum of Support, defendant states that the action "should be remanded in its entirety or he should be severed from this action in Federal Court" [Doc. 37 p. 6]. In plaintiffs' response filed on October 17, 2017, plaintiffs support defendant's motion to the extent that it seeks remand of the entire case; however, plaintiffs oppose defendant's submission that he can and should be severed from this action [Doc. 51]. Defendant's motion and the parties' subsequent responses and replies do not change the Court's analysis for the plaintiffs' pending Motion to Remand [Doc.11].

submits, in the alternative, that the Provider Defendants are dispensable parties subject to severance.

The threshold issue in deciding this motion to remand is whether Endo's Notice of Removal [Doc. 1] was procedurally defective. Pursuant to 28 U.S.C. §§ 1441, 1446, the Court must first determine whether defendants were properly joined before turning to the issue of consent and the principle of complete diversity.

### A. Fraudulent Joinder

Before discussing the arguments submitted by the plaintiffs and Endo, it is important to distinguish the doctrine of fraudulent joinder from the doctrine of fraudulent misjoinder (also called "procedural misjoinder"). The fraudulent joinder doctrine applies when a plaintiff, to defeat diversity jurisdiction, joins a non-diverse party against whom the plaintiff has no cause of action. *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). By contrast, under the fraudulent misjoinder doctrine, a plaintiff has a cause of action against a non-diverse party, but that claim does not arise from the same transaction or occurrence, or the cause of action does not stem from a common question of law or fact. *See* Fed. R. Civ. P. 20; *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (1996).

To illustrate, if a Tennessee singer-songwriter sued a New York venue where she was to perform, seeking $100,000 in damages for breach of contract, the New York venue could remove the case to federal court based on diversity jurisdiction. *See* § 1332. If the Tennessee singer-songwriter wanted to defeat diversity jurisdiction by also including in the action a defamation claim against a Tennessee newspaper publisher for false statements

made eleven months earlier, then the New York defendant could argue that the fraudulent *misjoinder* doctrine should apply. The fraudulent *joinder* doctrine would likely not apply because the Tennessee singer-songwriter had a cause of action against the Tennessee newspaper publisher. However, joining the defamation claim with the unrelated breach of contract claim in order to defeat diversity jurisdiction would be inappropriate under the fraudulent *misjoinder* doctrine because it did not arise from the same transaction or occurrence and did not involve a common question of law or fact. *Cf. Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 599 (E.D. Ky. 2011) (providing another illustration of the distinction between fraudulent joinder and fraudulent misjoinder).

In responding to plaintiffs' motion to remand, the Manufacturer Defendants assert that the Provider Defendants were not properly joined and so their consent to removal was not necessary. To determine whether a party was properly joined, the Court must consider the doctrine of fraudulent joinder. While the Manufacturer Defendants do not address the issue of fraudulent joinder directly, the Court will turn first to this issue because plaintiffs raise the doctrine in the motion to remand and their reply memorandum. Under the doctrine of fraudulent joinder, a plaintiff fails to properly join a defendant when the plaintiff joins non-diverse parties against whom the plaintiff has no cause of action. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). The burden is on the removing party to show that the plaintiffs fraudulently joined non-diverse parties "against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624

(6th Cir. 2009); *see also Walker v. Philip Morris USA, Inc.,* 443 F. App'x 946, 951 (6th Cir. 2011).

In *Coyne*, the Sixth Circuit set forth the standard this Court must apply:

> To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

*Coyne*, 183 F.3d at 493 (internal quotations and citations omitted). The Sixth Circuit held that the plaintiffs "failed to plead viable state law causes of action against the local [d]efendants," and so the non-diverse defendants were not properly joined. *Id*.

Plaintiffs assert DDLA and nuisance claims against both the Manufacturer Defendants and the Provider Defendants. In the Notice of Removal, Endo submits that the claims against the Manufacturer Defendants are actually based on product misrepresentation, whereas the claims against the Provider Defendants are based on illegal distribution [Doc. 1 p. 8]. Pursuant to the standard set forth in *Coyne*, the burden is on the defendants to "present sufficient evidence" that plaintiffs are unable to establish a cause of action against the Provider Defendants under Tennessee state law. 183 F.3d at 493. While Endo does assert that plaintiffs' claims against the Manufacturer Defendants and the Provider Defendants are distinct, Endo fails to provide "sufficient evidence" that no cause of action could have been brought against the Provider Defendants under Tennessee state law. Plaintiffs rely on the DDLA, which they assert was drafted "precisely to place

8

multiple participants in the illegal drug market in a single count where they can be held collectively accountable for the damage they have done" [Doc. 12 p. 10]. Endo, on the other hand, describes the claims against the Manufacturer Defendants and the Provider Defendants as distinct and then assert that the claims "bear little resemblance" to each other [Doc. 1 p. 8] (internal citations omitted). Endo does not argue that plaintiffs could not bring DDLA or nuisance claims against the Provider Defendants—they simply offer an alternative legal theory. As "the plaintiff is the master of the complaint," plaintiffs here may assert state law claims against parties of their choosing, subject only to the rules of joinder. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–399 (1987).

Since Endo has failed to meet the burden required under *Coyne*, and plaintiffs show a "colorable basis" for bringing state law claims against both the Manufacturer Defendants and the Provider Defendants, the fraudulent joinder theory fails. *See* 183 F.3d at 493.

### B. Fraudulent Misjoinder (Procedural Misjoinder)

Endo's primary argument for why the Provider Defendants were improperly joined rests on the adoption of the fraudulent misjoinder doctrine. Whereas the fraudulent joinder doctrine has been widely accepted, most courts have declined to adopt the fraudulent misjoinder doctrine. *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, 591 F. 3d 613, 622 (8th Cir. 2010); *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732 (10th Cir. 2010); *In re Benjamin Moore & Co.,* 318 F.3d 626, 630–31 (5th Cir. 2002); *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.,* 24 Fed.Appx. 727, 729 (9th Cir.2001); *Robinson v. Ortho-McNeil Pharm., Inc.*, 533 F. Supp. 2d 838, 842 (S.D. Ill. 2008); *see also*

Richard E. Kaye, *Construction and Application of Fraudulent Misjoinder Exception to Complete Diversity Rule*, 65 A.L.R. Fed. 2d 527 (2012) (describing how different courts have ruled on the fraudulent misjoinder doctrine). In the Sixth Circuit, only one decision from the Eastern District of Kentucky has recognized the doctrine, and the decision has been questioned in more recent opinions. *Asher v. Minn. Mining & Mfg. Co.*, No. 4-CV-522-KKC, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 2005). *But see Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 491 n.1 (6th Cir. 2013); *Cent. Bank v. Jerrolds*, No. 14-1163, 2015 WL 1486368, at *4 (W.D. Tenn. Mar. 31, 2015); *Murriel-Don Coal Co., Inc.*, 790 F. Supp. 2d at 599.

Several factors weigh against this Court adopting the fraudulent misjoinder doctrine today. The doctrine is ambiguous, and spending time resolving the ambiguities does not aid the Court in resolving today's dispute. Regardless of whether the doctrine is applied, plaintiffs still prevail on their motion to remand.

Only a few courts have adopted the fraudulent misjoinder doctrine, and the courts that recognize the doctrine struggle to apply it. Courts have discussed the nuances of the doctrine and its potential applicability in different cases, but very little has been resolved. First, the Court must decide whether state or federal joinder rules apply. Most courts that have adopted the fraudulent misjoinder doctrine have applied state procedural law instead of federal procedural law. *Asher*, 2005 WL 1593941, at *6; *see also, e.g.*, *Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127–28 (E.D. Cal. 2004); *Lyons v. Lutheran Hosp. of Ind.*, No. 104-CV-728-DFH-VSS, 2004 WL 2272203, at *5 (S.D. Ind. Sept. 15, 2004).

However, "the governing legal standards regarding the fraudulent misjoinder doctrine are far from clear." *Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004).

If this Court were to adopt the fraudulent misjoinder doctrine and apply Tennessee procedural law, then the outcome in favor of the plaintiffs would be identical to the outcome if the Court did not adopt the doctrine. Tennessee's DDLA allows the joinder of defendants if they "are liable to at least one plaintiff." Tenn. Code Ann. § 29-38-110(b). Tennessee's DDLA imposes liability on any "person who knowingly participates in the illegal drug market." Tenn. Code Ann. § 29-38-105(a). Here, plaintiffs have joined both opioid manufacturers and opioid providers under this state statute, alleging that the Manufacturer Defendants knew of both the addictive power of their drugs and the diversion of opioids to the Provider Defendants. Plaintiffs allege that the Manufacturer Defendants and the Provider Defendants were locked in a mutually beneficial scheme within the illegal drug market. Because, according to plaintiffs, both the Provider Defendants and the Manufacturer Defendants knowingly participated in the illegal drug market, they both are liable under Tennessee's DDLA and can thus be joined under § 29-38-110(b) of the DDLA. Accordingly, if this Court were to adopt the fraudulent misjoinder doctrine and apply state procedural law, then the state law claim that plaintiffs assert against Provider Defendants and Manufacturer Defendants allows the plaintiffs to join defendants in one action. Because the presence of Provider Defendants defeats diversity jurisdiction, under the fraudulent misjoinder doctrine, plaintiffs would prevail.

11

Next is the issue of what standard to apply. Just like the question of whether to apply state or federal law has not been settled, the question of what standard to use under the fraudulent misjoinder doctrine is also ambiguous. The Eleventh Circuit has suggested that a misjoinder would have to be "egregious" in order to accept jurisdiction over non-diverse defendants. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996). Other courts have adopted this standard as well. *See, e.g., Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004); *see also Geffen v. General Elec. Co.*, 575 F. Supp. 2d 865, 870 n.5 (N.D. Ohio, 2008) ("Whether misjoinder must be egregious or just something more than 'mere misjoinder' is one of many unsettled questions about the fraudulent misjoinder doctrine."). Many courts have similarly suggested that "mere misjoinder" is not "fraudulent misjoinder," but they have not necessarily outlined a clear rule. *See, e.g.*, *In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir. 2002) (per curiam); *Geffen*, 575 F. Supp. 2d at 870; *Bright v. No Cuts, Inc.*, No. Civ. 3-640, 2003 WL 22434232, at *4 (E.D. La. Oct. 27, 2003); *In re Diet Drugs Prods. Liab. Litig.*, No. Civ. 98-0994, 1999 WL 554585, at *3 (E.D. Pa. July 16, 1999). Others have suggested that a more relaxed standard is appropriate. *See, e.g.*, *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp 2d 390, 396–97 (S.D. W. Va. 2004); *In re Rezulin Prods. Liab. Litig.,* 168 F. Supp. 2d 136, 147–48 (S.D.N.Y. 2001). The only district court in the Sixth Circuit to adopt the fraudulent misjoinder doctrine did not decide on a specific standard to apply. *See Asher*, 2005 WL 1593941, at *7.

Resolving the issue of what standard to apply, however, does not affect the outcome of plaintiffs' motion. Regardless of whether the misjoinder must be "egregious" or something less, here, the DDLA explicitly authorizes the joinder of Manufacturer Defendants and Provider Defendants. Even if Tennessee state courts interpreted the DDLA not to allow this joinder, this would be an example of "mere misjoinder" based on a different interpretation of the DDLA. Courts have agreed this is not enough to constitute fraudulent misjoinder. *See, e.g.*, *Tapscott*, 77 F.3d 1353 (11th Cir. 1996). Furthermore, the Federal Rules of Civil Procedure already establish a minimum standard for joining parties in a single action. Rule 20(a) establishes which persons may be joined, and Rule 21 authorizes the court to add or drop a party who is wrongfully joined. The fraudulent misjoinder doctrine simply adds an extra requirement to the existing federal rules by requiring an analysis of how egregious the misjoinder was. This extra step is unnecessary in the present action. The DDLA authorizes the joinder of these defendants, and so reaching a decision as to what standard should apply under the fraudulent misjoinder doctrine does not change the outcome of plaintiff's motion to remand.

The fraudulent misjoinder doctrine is complex, ambiguous, and perhaps even unnecessary. Few courts have acknowledged it as a viable doctrine. Fewer still have affirmatively adopted it. Even courts that have adopted it, though, do not consider the doctrine of fraudulent joinder settled law. *See Walton*, 338 F. Supp. 2d at 695 ("[T]he governing legal standards regarding the fraudulent misjoinder doctrine are far from clear."). It appears that a plaintiff's attempt to join parties must be more than "mere

misjoinder," but it is not clear whether a plaintiff's attempt to join parties must rise to the level of "egregious." Additionally, while most courts seem to be in agreement that state procedural law should be applied, it is not clear whether this question should be resolved by the state court before removal or by the federal court after removal. *See Murriel-Don Coal Co., Inc.*, 790 F.Supp.2d at 599; 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723 (4th ed. 2009) ("In many situations, confusion could be reduced if removing parties would challenge fraudulent joinders and misjoinders in state court, before defendants file a removal notice."). Furthermore, some courts have implied that the misjoinder of plaintiffs should be treated differently than the misjoinder of defendants. *See In re Rezulin Prods. Liab. Litig.,* 168 F.Supp.2d at 136 (S.D.N.Y. 2001). Finally, it appears that no court has ever used the doctrine of fraudulent misjoinder for the purpose of determining whether the unanimous consent requirement has been met. So, even if the Court adopted the fraudulent misjoinder doctrine, even if it established a clear standard, and even if it made a decision on whether to treat plaintiffs or defendants differently, it is not clear if the doctrine would apply in this case. *See Johnson v. Love,* 2015 WL 5138257, *3 (E.D. Ky. Aug. 31, 2015).

Ultimately, since federal courts have limited jurisdiction, the Court must resolve ambiguities "in favor of remand." *Brierly*, 184 F.3d 527, 534 (6th Cir. 1999). Because the fraudulent misjoinder doctrine disfavors remand by allowing non-diverse defendants to remain parties to an action in federal court based solely on diversity jurisdiction, the Court must decline to adopt the doctrine in the present action.

Left with only the fraudulent joinder theory to guide the Court's analysis of whether joinder was proper in the case, this Court finds that defendants were properly joined. Pursuant to 28 U.S.C. § 1441, an action removed on the basis of diversity jurisdiction may not be removed if a party "properly joined and served as defendant[] is a citizen of the State in which such action is brought." Here, the Provider Defendants, who were properly joined under the DDLA, are citizens of Tennessee, the state in which the action was initially brought. Furthermore, all "properly joined" defendants must consent to jurisdiction under the rule of unanimity. § 1446(b)(2)(A). In *Loftis*, the Sixth Circuit noted that "failure to obtain unanimous consent forecloses the opportunity for removal under Section 1446." 342 F. 3d at 516. It held that the "district court should have granted plaintiff's initial motion . . . to remand because defendants . . . failed to satisfy the rule of unanimity." *Id.* at 517. Several defendants did not consent, so the Notice of Removal was procedurally defective and remand is appropriate.

### C. Curing Procedural Defect

The Court now turns to the issue of whether defendants can cure the procedural defect in their Notice of Removal upon remand. In *Daniel v. Anderson County Emergency & Rescue Squad*, this Court held that the defendant could not amend its petition for removal for failure to consent. 469 F. Supp. 2d 494, 497 (E.D. Tenn. 2007). In the present action, defendants failed to join several defendants in the removal action, and defendants failed to obtain their consent in a timely manner as required by 28 U.S.C. § 1446(b)(2)(A).

15

The issue of curing procedural defects has been addressed more thoroughly in the Sixth Circuit, which has sometimes allowed parties to amend the Notice of Removal. *See Klein v. Manor Healthcare Corp.*, 19 F. 3d 1433 (6th Cir. 1994); *Gafford v. General Elec. Co.*, 997 F. 2d 150, 164 (6th Cir. 1993); *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.*, 5 F. 3d 963, 969 (6th Cir.); *Roberts v. Glens Falls Ins. Co.*, 415 F. Supp. 2d 779, 779–780 (N.D. Ohio 2006); *Jordan v. Murphy*, 111 F. Supp. 2d 1151 (N.D. Ohio 2000); *Stanley Elec. Contractors, Inc. v. Darin & Armstrong Co.*, 486 F. Supp. 769,773 (E.D. Ky. 1980). However, these cases are distinguishable from the case before the Court today. In *Gafford*, the defendant failed to state a corporation's principal place of business on the Notice of Removal, and the Sixth Circuit held that this procedural deficiency was properly cured through an affidavit and a hearing on the issue. 997 F. 2d at 164. Here, defendants have made no effort to obtain consent of the remaining Provider Defendants by amending the Notice of Removal or filing an affidavit. In *Roberts*, the court allowed the defendants to amend their removal petition to add a missing signature consenting to removal eight days after the consent deadline had passed. 415 F. Supp. 2d at 782. In the case before the Court, defendants acknowledge that the remaining defendants have not consented, and their only response is that the remaining signatures are not necessary.

Furthermore, in *Tech Hills*, *Klein*, and *Gafford*, the parties did not dispute whether the district court had jurisdiction. *See Klein*, 19 F. 3d 1433, 1994 WL 91786 at *3; *Gafford,* 997 F. 2d at 164; *Tech Hills II Assocs.,* 5 F. 3d at 969. In *Gafford*, the Sixth Circuit stated that "[i]t is better if the jurisdiction in fact exists, to permit the petition for removal to be

amended to reflect it," emphasizing that a key consideration to allowing an amendment is whether the court even has jurisdiction. Based on the previous discussion where this Court concluded that plaintiffs properly joined Manufacturer Defendants and Provider Defendants, the parties fail to satisfy the complete diversity requirement, and under *Gafford*, the Court should not allow parties to amend a significant procedural deficiency..

    **D.**    **Severance**

Endo next asserts that the Court can sever the Provider Defendants from the action and remand claims against the Provider Defendants to state court. Plaintiffs assert that severing the Provider Defendants would be improper and that their presence requires the Court to remand for lack of complete diversity of citizenship. Plaintiffs also assert that no case in the Sixth Circuit "has ever allowed a defendant to avoid the Section 1446 unanimous consent requirement on the basis of procedural misjoinder or severance under Rule 21" [Doc. 24 p. 4]. While the Sixth Circuit has held that a court may drop a nondiverse and dispensable party to achieve diversity, the case must otherwise properly be before the court. *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.,* 181 F. 3d 759, 763 (6th Cir. 1999). In adopting the rule of unanimity, the Sixth Circuit stated, "[f]ailure to obtain unanimous consent forecloses the opportunity for removal under Section 1446." *Loftis,* 342 F. 3d at 516. Here, the defendants failed to obtain unanimous consent, and so they were foreclosed from removing the action. Because the action is not properly before this Court, the Court

17

need not decide whether Provider Defendants are dispensable and whether they should be dropped from the litigation.[4]

   E.   **Attorney's Fees**

Plaintiffs seek attorney's fees under 28 U.S.C. § 1447. In support, plaintiffs assert that Endo has no "objectively reasonable basis" for their Notice of Removal [Doc. 12 p. 19]. Plaintiffs submit that because defendants knew they could not satisfy the unanimous consent requirement, the removal effort was "doomed from the outset" [Doc. 24 p. 14]. In response, Endo cites *Martin v. Franklin Capital Corp.* where the Supreme Court held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." 546 U.S. 132, 136 (2005). Endo further submits that since other courts in the Sixth Circuit have discussed and adopted the fraudulent misjoinder argument, they had a reasonable basis for seeking removal. The Court agrees.

Although the Sixth Circuit has not adopted the fraudulent misjoinder doctrine, it has been adopted by at least one court within the circuit. *Asher*, 2005 WL 1593941, at *7.

---

[4] On October 11, Endo filed a Notice of Recent Development Relevant to Plaintiffs' Pending Motion to Remand [Doc. 36]. Endo informed the court that governmental plaintiffs in 46 opioid-related lawsuits have recently sought a Multi-District Litigation ("MDL") that would include this action [Doc. 36-1]. Plaintiffs responded [Doc. 52] to urge the Court to address the Motion to Remand before the action is transferred to an MDL. While an MDL might give rise to exceptional circumstances where severance is appropriate, a district court's pretrial proceedings are not affected while the motion to transfer to an MDL is pending. *See* J.P.M.L. Rule 2.1. Because the determination by the Judicial Panel on Multidistrict Litigation ("JPML") of whether an MDL is necessary is ongoing [Doc. 31 p. 2], the Court must still consider the threshold question of whether it has subject matter jurisdiction. The Court has determined it does not have subject matter jurisdiction, and so the Court may remand the case despite the pending motion to transfer to an MDL.

Furthermore, it is unclear whether the doctrine should be applied in context of the procedural consent requirement. While the court in *Johnson* noted that "fraudulent misjoinder is not a recognized exception to the rule of unanimity," it did not hold that the fraudulent misjoinder doctrine could never be a recognized exception. *See* 2015 WL 5138257, at *3. A single district court's rejection of the doctrine's application to the consent requirement does not mean that other courts can never consider the doctrine in the context of the rule of unanimity. Because other courts have recognized the doctrine of fraudulent misjoinder, and this Court has never decided whether the doctrine applies to the procedural consent requirement, Endo had an "objectively reasonable basis for removal." *See Martin*, 546 U.S. at 136. While this Court chooses not to adopt the fraudulent misjoinder doctrine and ultimately declines to exercise jurisdiction, Endo's removal was not objectively unreasonable, and therefore an award of attorney's fees to plaintiffs is inappropriate.

IV. **Conclusion**

For the reasons set forth herein, the Court will **GRANT in part and DENY in part** plaintiffs' Motion to Remand [Doc. 11]. The Court will **GRANT** plaintiffs' request to remand this action, and the Court will **REMAND** this action to the Circuit Court for Sullivan County, Tennessee. The Court will **DENY** plaintiffs' request for attorney's fees. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE
